**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

ADRIENNE HENRY

and

R.H., a minor, by and through her
next friend and natural mother,
Plaintiff Adrienne Henry,

Plaintiffs,

v.

IRON COUNTY,
SERVE: Iron County
      c/o Masha Womble, County Clerk
      250 South Main Street,
      Ironton, MO 63650
and

**JURY TRIAL DEMANDED**

DONALD RICKIE GASTON,
SERVE:  1492 Highway 21
      Caledonia, Missouri 63631

**Cause No.:**

and

JEFFERY BURKETT, individually
and in his official capacity as Sheriff
of Iron County, Missouri,
SERVE:  65 County Road 158
      Des Arc, MO 63636

and

CHASE BRESNAHAN, individually
and in his official capacity as deputy
for the Iron County Sheriff's
Department,
SERVE:  40682 HWY 21
      Centerville, MO 63633

and

**MATTHEW COZAD, individually
and in his official capacity as a deputy
for the Iron County Sheriff's
Department,**

SERVE:  107 Bixby Trailer Court
           Bixby, MO 65439

**and**

**VERIZON COMMUNICATIONS INC.**

SERVE: The Corporation Trust Company
           Corporation Trust Center
           1209 Orange St
           Wilmington, DE 19801

> **Defendants.**

## COMPLAINT

Plaintiffs Adrienne Henry ("Ms. Henry")  and R.H., a minor by and through her Next Friend and Natural Mother, Adrienne Henry, (collectively "Plaintiffs") state the following for their Complaint against Defendants Iron County, Missouri, Donald Rick Gaston ("Defendant Gaston"), Jeffery Burkett ("Defendant Burkett"), Chase Bresnahan ("Defendant Bresnahan") Matthew Cozad ("Defendant Cozad"), and Verizon Communications Inc. ("Defendant Verizon").

## PARTIES, JURISDICTION, VENUE

1.      Adrienne Henry is a resident and citizen of Missouri.

2.      R.H. is a minor child, represented by and through her Next Friend and Mother Adrienne Henry, and is a resident and citizen of Missouri. Defendant Gaston is not R.H.'s father.

3.      Iron County is a Political Subdivision of the State of Missouri and is the legal entity responsible for itself and for the Iron County Sheriff's Office. Iron County was the employer of

2

Defendant Burkett, Defendant Bresnahan and Defendant Cozad, and has the capacity to sue or be sued.

4. Defendant Gaston is a resident and citizen of Missouri.

5. Defendant Burkett is a resident and citizen of Missouri. At all times relevant, Defendant Burkett was acting under the color of state law in his capacity as Sheriff of Iron County employed by the Iron County Sheriff's Office and was acting in the course and scope of his employment therein. Defendant Burkett is sued in his individual and official capacity.

6. Defendant Bresnahan is a resident and citizen of Missouri. At all times relevant, Defendant Bresnahan was acting under the color of state law in his capacity as a law enforcement officer employed by the Iron County Sheriff's Office and was acting in the course and scope of his employment therein. Defendant Bresnahan is sued in his individual and official capacity.

7. Defendant Cozad is a resident and citizen of Missouri. At all times relevant, Defendant Cozad was acting under the color of state law in his capacity as a law enforcement officer employed by the Iron County Sheriff's Office and was acting in the course and scope of his employment therein. Defendant Cozad is sued in his individual and official capacity.

8. Defendant Verizon is a Delaware corporation with its principal place of business in New York.

9. Defendant Verizon is subject to personal jurisdiction in Missouri. Defendant Verizon is authorized to conduct business in Missouri, conducts substantial and continuing business in Missouri, derives substantial economic profits from Missouri, sells its communication products and services in Missouri, sold the subject communication service at issue in this lawsuit in Missouri, and committed a tortious act in Missouri.

10. This action arises under the Constitution and laws of the United States, including Article III Section 1 of the United States Constitution and is brought pursuant to 42 U.S.C. §§ 1983

and 1988. Jurisdiction against Defendants is conferred upon this Court by 28 U.S.C. § 1331 and by the doctrine of supplemental jurisdiction under 28 U.S.C. § 1367.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Iron County, Missouri, within this Court's geographic judicial district.

## FACTUAL ALLEGATIONS

12.     Plaintiff Adrienne Henry and Defendant Gaston were previously engaged in a long-term relationship but were never married.

13.     On or around July 19, 2017, J.G., the daughter of Plaintiff Adrienne Henry and Defendant Gaston was born.

14.     There is a temporary custody order entered into in May 2022 regarding J.G., made during a period of separation between the two. The order provides that Plaintiff Adrienne Henry was to receive custody at all times that Defendant Gaston was not expressly entitled to custody.

15.     The temporary order stated that Defendant Gaston was to have custody "every other weekend" and "every other Wednesday . . . Starting Wednesday, May 25, 2022." Because Plaintiff Adrienne Henry and Defendant Gaston had gone through periods of separation and reconciliation, it was impossible to determine with confidence who should have had custody the weekend of February 10-12, 2023.

16.     On or about Wednesday, February 8, 2023, Plaintiff Adrienne Henry and Defendant Gaston engaged in an argument.

17.     At approximately 6:22 PM, a call to Washington County 911 was placed. Reports from the call state that Defendant Gaston was being physically aggressive.

4

18.    While the disturbance occurred in Iron County, Washington County 911 has an operating agreement with Iron County to handle the county's 911 calls, as well as law enforcement dispatch.

19.    A video recording was taken during the conflict. It is about four minutes long with no visual, but voices are audible. Defendant Gaston can be heard calling Plaintiff Adrienne Henry "a f**king psycho," and his repeated yelling, "Get out of my face." Defendant Gaston is heard yelling, "Touch me again." Near the end of the video, a female juvenile, assumed to be Plaintiff R.H., says, "touch her again and I swear to god, I'll call the f**king cops."

20.    Following the 911 call, three law enforcement officers, one of which being Defendant Bresnahan, were dispatched to Defendant Gaston's residence.

21.    Upon the arrival of the three officers, Plaintiff Adrienne Henry and Defendant Gaston were separated, and Plaintiff Adrienne Henry left the home with her daughters, Plaintiff R.H. and J.G.

22.    Iron County Sheriff's Deputy Herbert was present at the scene and stated that neither party seemed intoxicated at the time of the event and that Defendant Gaston willingly allowed Plaintiff Adrienne Henry to leave with J.G. in her custody.

23.    On or about Thursday, February 9, 2023, Plaintiff Adrienne Henry contacted the Iron County Sheriff's Office in order for them to accompany her back to Defendant Gaston's residence. Upon arrival, Defendant Gaston refused to allow anyone to enter the residence.

24.    On or about Friday, February 10, 2023, Plaintiffs Adrienne Henry and R.H., as well as J.G. travelled to a relative's home in Jefferson County, Missouri seeking safety and distance from Defendant Gaston.

25.    On or about Friday, February 10, 2023, Defendant Bresnahan filed a warrant application to the Iron County Prosecuting Attorney requesting felony charges for Assault in the

First Degree and Endangering the Welfare of a Child in the First Degree against Plaintiff Adrienne Henry. The prosecuting attorney denied the issuance of any criminal charges.

26. On or about February 10, 2023, Plaintiff Adrienne Henry was visiting her attorney when she received a call from Defendant Cozad. He told her that the Iron County Judge was at the Iron County Sheriff's Office waiting for her to bring J.G. to them.

27. Plaintiff Adrienne Henry's attorney called the judge to confirm, at which time he said that he was not at the Iron County Sheriff's Office. Upon receipt of this information, Plaintiff's attorney called Defendant Cozad again, who said to bring the child to him immediately.

28. On or about Friday, February 10, 2023, Defendant Burkett called Washington County 911 and requested a "ping" to Plaintiff Adrienne Henry's cellular phone under the pretense that the purpose was to "check the well-being" of Plaintiff Adrienne Henry.

29. Upon information and belief, Defendant Burkett also stated that J.G. was potentially injured and falsely claimed Plaintiff Adrienne Henry was possibly intoxicated.

30. At or about 6:34 PM on February 10, 2023, Defendant Verizon was contacted to request the "ping," which they provided without certification of immediate danger of death or injury to a person.

31. During the 911 phone call, Defendant Burkett stated he was with Defendant Gaston. The report from the call noted that Defendant Gaston was giving Defendant Burkett instruction on what to say to the operator, at one point stating, "Mr. Gaston is going to come up there and try to get his daughter."

32. Upon telling the 911 Dispatcher to have the dispatched officers "just park at the entrance, don't go onto the property," Defendant Burkett said, "That's at Mr. Gaston's request."

33. At or about 9:22 PM, Defendant Gaston called the Washington County 911 Dispatch center and stated that he was trying to talk Defendant Burkett, and stated, "He and I are working together tonight."

34. At or about 9:54 PM, Washington County Dispatch Center contacted Jefferson County to relay the information. Jefferson County Dispatch inquired if there was a warrant for charges, upon which Washington County responded stating that they were informed that a warrant application was submitted, but no charges had been issued.

35. At or about 10:22 PM, the 911 Dispatch Center discussed Plaintiff Adrienne Henry's "pinged" location with Defendant Burkett, and the fact that it is the home of a Jefferson County Sheriff's Deputy and Plaintiff Adrienne Henry's relative. The dispatcher gave Defendant Burkett the address, who later communicated it to Defendant Gaston.

36. Upon dispatch, the Jefferson County Sergeant conducted a welfare check on the children at Plaintiff Adrienne Henry's location, where he found no visible injuries and that the children were fine. This and the fact that Plaintiff Adrienne Henry was not taken into custody was relayed to Defendant Burkett, who stated, "Okay, that's fine…Well, they're gonna have another issue because [Defendant] Gaston is on his way there."

37. On or about February 11, 2023, Plaintiff Adrienne Henry took daughter J.G. to an urgent care to document her lack of injuries.

38. Plaintiffs Adrienne Henry and R.H., along with J.G. stayed at the relative's home for many weeks following the incident out of fear of unwarranted arrest and Defendant Gaston's behavior.

39. On or about February 18, 2023, Plaintiff R.H. was staying with a friend when multiple Iron County Deputy Sheriffs arrived to ask her to come to the station to give a report.

7

They also asked for her cell phone, which was under Plaintiff Adrienne Henry's Account and Defendant Verizon was the service provider.

40.     The mother of the friend attempted to reach Plaintiff Adrienne Henry but was unable to immediately. The friend's mother escorted Plaintiff R.H. to the Iron County Sheriff's Office with a police car in front of and behind her.

41.     On or about February 18, 2023, at approximately 2:52 p.m., Defendant Bresnahan contacted Washington County 911 dispatch by phone and requested a phone ping for endangerment of a child. Defendant Bresnahan stated the ping was related to Adrienne Henry and provided a cellular number.

42.     Washington County 911 Dispatch rejected the ping request due to it not being an active investigation.

43.     Defendant Bresnahan then contacted Defendant Verizon directly and initiated an exigent ping for Henry's phone. Defendant Verizon accepted the information received from Defendant Bresnahan and sent email confirmation of the ping to Bresnahan's phone.

44.     On April 26, 2023, Defendants Burkett, Cozad, Bresnahan, and Gaston were arrested on charges of Participating Knowingly in Criminal Street Gang Activities, Tamper or Attempt to Tamper with a Victim in a Felony Prosecution, Stalking, and Misusing "911," among others.

45.     In the weeks and months following the incidents, Plaintiffs suffered mental distress, anxiety and apprehension to leave their home.

## COUNT I

**42 U.S.C. § 1983 – Unreasonable Search in Violation of the Fourth Amendment**
**(Plaintiff Adrienne Henry v. Defendants Burkett, Bresnahan, Cozad, and Iron County)**

46.     Plaintiffs incorporate the above allegations as though fully set forth herein.

8

47.    42 U.S.C. § 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

48.    Plaintiff Henry is and was a citizen of the United States and thus entitled to the full benefits and equal protection of the Federal Constitution and all laws and regulations enacted thereunder. Defendants Burkett, Cozad, Bresnahan, and Gaston are persons under 42 U.S.C. § 1983.

49.    Defendant Burkett, at all times relevant, was acting under the color of the statutes, ordinances, regulations, customs, and law of the State of Missouri in his capacity as Sheriff of Iron County and his acts or omissions were conducted within the scope of his official duties or employment.

50.    Defendants Cozad and Bresnahan, at all times relevant, were acting under the color of the statutes, ordinances, regulations, customs, and law of the State of Missouri in their capacity as Sheriff's Deputies of Iron County and their acts or omissions were conducted within the scope of their official duties or employment.

51.    At the time of the incident that is the subject of Plaintiff Adrienne Henry's complaint, Ms. Henry had clearly established constitutional rights, including a right under the Fourth Amendment to be secure in her person against unreasonable search without warrant issued upon probable cause.

52.    Ms. Henry had a reasonable expectation of privacy in her physical movements based on cell phone "pings."

9

53.     Any reasonable police officer would know or should have known of this right at the time of the complained of conduct as it was clearly established.

54.     The Defendants' actions in seeking out and discovering the location of Ms. Henry using the Washington County 911 Dispatch Center and Defendant Verizon's access to cellular phone "pings" without a warrant or the requisite exigency or emergency to except the necessity of a warrant were objectively unreasonable in light of the facts and circumstances and so violated the Fourth Amendment rights of Ms. Henry.

WHEREFORE Plaintiffs pray for judgment against Defendants in a fair and reasonable amount in excess of seventy-five thousand dollars ($75,000.00) for the harms and losses they have suffered, for the costs incurred herein, for attorneys' fees, for punitive damages, and for any further relief this Court deems just and proper.

## COUNT II

**42 U.S.C. § 1983 – Unreasonable Seizure in Violation of the Fourth Amendment
(Plaintiff R.H. v Defendants Burkett, Bresnahan, Cozad, and Iron County)**

55.     Plaintiffs incorporate the above allegations as though fully set forth herein.

56.     42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

57.     Plaintiff is and was a citizen of the United States and thus entitled to the full benefits and equal protection of the Federal Constitution and all laws and regulations enacted thereunder. Defendant Burkett is a person under 42 U.S.C. § 1983.

58.     Defendants Burkett, at all times relevant, was acting under the color of the statutes, ordinances, regulations, customs, and law of the State of Missouri in his capacity as Sheriff of Iron

10

County and his acts or omissions were conducted within the scope of his official duties or employment.

59. Defendants Cozad and Bresnahan, at all times relevant, were acting under the color of the statutes, ordinances, regulations, customs, and law of the State of Missouri in their capacity as Sheriff's Deputies of Iron County and their acts or omissions were conducted within the scope of their official duties or employment.

60. At the time of the incident that is the subject of Plaintiff R.H.'s complaint, R.H. had clearly established constitutional rights, including a right under the Fourth Amendment to be secure in her person against unreasonable search and seizure without warrant issued upon probable cause.

61. R.H. had a reasonable expectation of privacy in her physical movements based on cell phone "pings."

62. Any reasonable police officer would know or should have known of this right at the time of the complained of conduct as it was clearly established.

63. The actions of Defendants in learning a minor child's location from her cell phone, and/or then sending multiple officers to seize the minor child Plaintiff R.H. from a friend's home while she was away from her parent and/or legal guardian is objectionably unreasonable in light of the facts and circumstances and so violated R.H.'s Fourth Amendment rights.

64. The Defendants' actions in seeking out and discovering the location of R.H. using the Washington County 911 Dispatch Center and Defendant Verizon's access to cellular phone "pings" without a warrant or the requisite exigency or emergency to except the necessity of a warrant were objectively unreasonable in light of the facts and circumstances and so violated the Fourth Amendment rights of R.H.

WHEREFORE Plaintiffs pray for judgment against Defendants in a fair and reasonable amount in excess of seventy-five thousand dollars ($75,000.00) for the harms and losses they have suffered, for the costs incurred herein, for attorneys' fees, for punitive damages, and for any further relief this Court deems just and proper.

## **COUNT III**

**42 U.S.C. § 1983 – Conspiracy**
**(Plaintiffs v. Defendant Gaston and Defendants Burkett, Cozad, and Bresnahan, in their individual and official capacity)**

65.     Plaintiffs incorporate the above allegations as though fully set forth herein.

66.     42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

67.     Plaintiffs are and were citizens of the United States and thus entitled to the full benefits and equal protection of the Federal Constitution and all laws and regulations enacted thereunder. Defendants Burkett, Cozad, Bresnahan, and Gaston are persons under 42 U.S.C. § 1983.

68.     Defendant Gaston conspired with Defendants Burkett, Cozad and Bresnahan to seek out Plaintiff Adrienne Henry's location without warrant or probable cause and therefore violated her constitutional rights.

69.     Defendant Burkett provided information to and took instructions from Defendant Gaston in order to further his goal of locating Plaintiff Adrienne Henry and R.H.

70.     Defendant Burkett provided instructions to Defendants Cozad and Bresnahan who made willful actions in furtherance of the conspiracy.

71.     As a direct and proximate result of the Defendants' violation of Plaintiff Adrienne Henry's and R.H.'s federal constitutional and statutory rights, Plaintiffs suffered the aforementioned damages and losses, which are expected to be ongoing.

WHEREFORE Plaintiffs pray for judgment against Defendants in a fair and reasonable amount in excess of seventy-five thousand dollars ($75,000.00) for the harms and losses they have suffered, for the costs incurred herein, for attorneys' fees, for punitive damages, and for any further relief this Court deems just and proper.

## COUNT IV

**42 U.S.C. § 1983 – Deliberately Indifferent Policies, Practices, Customs, Training, and Supervision in violation of the Fourth Amendment**
**(Plaintiffs v. Defendant Iron County)**

72.     Plaintiffs incorporates the above allegations as if fully set forth herein.

73.     42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

74.     Plaintiff Adrienne Henry is and was a citizen of the United States and thus entitled to the full benefits and equal protection of the Federal Constitution and all laws and regulations enacted thereunder. Ms. Henry is a person under 42 U.S.C. § 1983.

75.     Plaintiff R.H. is and was a citizen of the United States and thus entitled to the full benefits and equal protection of the Federal Constitution and all laws and regulations enacted thereunder. R.H. is a person under 42 U.S.C. § 1983.

13

76. Iron County and its officials, employees, agents, and representatives were, at all times relevant, acting under the color of ordinances regulations, customs, and law of the State of Missouri.

77. At the time of the incident that is the subject of Plaintiffs' Complaint, Ms. Henry had clearly established constitutional rights, including the right under the Fourth Amendment to be secure in her person from unreasonable search.

78. At the time of the incident that is the subject of Plaintiffs' Complaint, R.H. had clearly established constitutional rights, including the right under the Fourth Amendment to be secure in her person from unreasonable search.

79. Iron County's officials, employees, agents, and representatives knew, or should have known, of these rights at the time of the complained of conduct as they were clearly established.

80. The acts or omissions of Irony County and its officials, employees, agents, and representatives, as described herein, deprived Plaintiffs of their constitutional and statutory rights and caused them other damages.

81. Iron County and its officials, employees, agents, and representatives intentionally, knowingly and purposely deprived Plaintiffs of their clearly established rights, privileges, and immunities as secured by the Constitution and laws of the United States in violation of 42 U.S.C. § 1983.

82. Iron County and its officials, employees, agents, and representatives, at all times relevant, were policymakers for Iron County and the Iron County Sheriff's Office, and in that capacity, established policies, procedures, customs, and/or practices for the same.

83.     Iron County had the authority to train, supervise, discipline, and otherwise control the officers of Iron County, and its sheriff's office, specifically including Defendants Burkett, Bresnahan, and Cozad.

84.     Iron County had a duty to train police under its employ and/or supervision, including Defendants Burkett, Bresnahan, and Cozad.

85.     Iron County had a duty to provide reasonable training to prevent the police officers in its employ and/or under its supervision from conducting an unlawful search of Plaintiffs in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

86.     Iron County failed to train, inadequately trained, or negligently trained the police officers in its employ and/or under its supervision as described in the preceding paragraphs in a manner that a reasonable county would have under the circumstances.

87.     Iron County and its officials, employees, agents, and representatives maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, which were the moving forces behind and proximately caused the violations of Plaintiffs' Constitutional rights as set forth herein.

88.     Iron County and its officials, employees, agents, and representatives have developed and maintained long-standing, department-wide customs, policies, procedures, and practices, and/or failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference to the constitutional rights of Plaintiffs and the public. The inadequacy of training and/or supervision is so likely to result in violation of Constitutional and federal rights, such as those described herein, that the failure to provide proper training and supervision is indifferent to those rights.

89.     The deliberately indifferent training and supervision provided by Iron County and its officials, employees, agents, and representatives resulted from a conscious and deliberate choice

15

to follow a course of action from among various alternatives available to it and were moving forces in the constitutional and federal violation injuries complained of by Plaintiffs.

90.     As a direct and proximate result of Iron County's interference with Plaintiffs' federal Constitutional and statutory rights, Plaintiffs have suffered the aforementioned damages and losses, which are expected to be ongoing.

91.     Plaintiffs are entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiffs pray for judgment against Iron County in a fair and reasonable amount in excess of seventy-five thousand dollars ($75,000.00) for the harms and losses they have suffered, for their costs incurred herein, for attorneys' fees, and for any further relief this Court deems just and proper.

## COUNT V

**42 U.S.C. § 1983 – Deliberately Indifferent Policies, Practices, Customs, Training, and Supervision in violation of the Fourth Amendment**
**(Plaintiffs v. Defendant Burkett)**

92.     Plaintiffs incorporates the above allegations as if fully set forth herein.

93.     42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

94.     Plaintiff Adrienne Henry is and was a citizen of the United States and thus entitled to the full benefits and equal protection of the Federal Constitution and all laws and regulations enacted thereunder.

16

95.     Plaintiff R.H. is and was a citizen of the United States and thus entitled to the full benefits and equal protection of the Federal Constitution and all laws and regulations enacted thereunder

96.     Defendant Burkett is a person under 42 U.S.C. § 1983.

97.     Defendant Burkett was, at all times relevant, acting under the color of ordinances regulations, customs, and law of the State of Missouri.

98.     At the time of the incident that is the subject of Plaintiffs' complaint, Plaintiffs had clearly established constitutional rights, including the right under the Fourth Amendment to be secure in her person from unreasonable search.

99.     Defendant Burkett knew, or should have known, of these rights at the time of the complained of conduct as they were clearly established.

100.    The acts or omissions of Defendant Burkett, as described herein, deprived Plaintiffs of their constitutional and statutory rights and caused them other damages.

101.    Defendant Burkett intentionally, knowingly and purposely deprived Plaintiffs of their clearly established rights, privileges, and immunities as secured by the Constitution and laws of the United States in violation of 42 U.S.C. § 1983.

102.    Defendant Burkett, at all times relevant, was a policymaker for Iron County and the Iron County Sheriff's Office, and in that capacity, established policies, procedures, customs, and/or practices for the same.

103.    Defendant Burkett had the authority to train, supervise, discipline, and otherwise control the officers of the Iron County Sheriff's Office, including Defendants Cozad and Bresnahan.

104.    Defendant Burkett had a duty to train police under his employ and/or supervision, including Defendants Cozad and Bresnahan.

17

105.    Defendant Burkett had a duty to provide reasonable training to prevent the police officers in his employ and/or under his supervision from conducting an unlawful search of Ms. Henry in violation of the Fourth Amendment to the United States Constitution.

106.    Defendant Burkett failed to train, inadequately trained, or negligently trained the police officers in his employ and/or under his supervision as described in the preceding paragraphs in a manner that a reasonable police chief would have under the circumstances.

107.    Defendant Burkett maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, which were the moving forces behind and proximately caused the violations of Plaintiffs' Constitutional rights as set forth herein.

108.    Defendant Burkett developed and maintained long-standing, department-wide customs, policies, procedures, and practices, and/or failed to properly train and/or supervise his officers in a manner amounting to deliberate indifference to the constitutional rights of plaintiffs and the public. The inadequacy of training and/or supervision is so likely to result in violation of Constitutional and federal rights, such as those described herein, that the failure to provide proper training and supervision is indifferent to those rights.

109.    The deliberately indifferent training and supervision provided by Defendant Burkett resulted from a conscious and deliberate choice to follow a course of action from among various alternatives available to him and were moving forces in the constitutional and federal violation injuries complained of by Plaintiffs.

110.    As a direct and proximate result of Defendant Burkett's interference with Plaintiffs' federal Constitutional and statutory rights, Plaintiffs have suffered the aforementioned damages and losses, which are expected to be ongoing.

111.    Plaintiffs are entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

18

112.   Defendant Burkett's conduct showed a complete indifference to or a conscious disregard for the safety of Plaintiffs and others, thereby justifying an award of punitive damages in such sum as will serve to punish and deter Defendant Burkett, and others, from like conduct in the future.

WHEREFORE Plaintiffs pray for judgment against Defendant Burkett in a fair and reasonable amount in excess of seventy-five thousand dollars ($75,000.00) for the harms and losses they have suffered, for their costs incurred herein, for attorneys' fees, for punitive damages, and for any further relief this Court deems just and proper.

<u>**COUNT VI**</u>
**18 U.S.C.A § 2702(a)(3) – Voluntary Disclosure of Customer Records to a
Governmental Entity
(Plaintiffs Adrienne Henry and R.H. v. Defendant Verizon)**

113.   Plaintiffs incorporate the above allegations as if fully set forth herein.

114.   The Stored Communications Act ("SCA"), 18 U.S.C. § 2702(a)(3) provides that:

> a provider of remote computing service or electronic communication service to the public shall not knowingly divulge a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications covered by paragraph (1) or (2)) to any governmental entity.

115.   Defendant Verizon is a provider of remote computing services or electronic communication services to the public within the meaning of 18 U.S.C. § 2510(15).

116.   Ms. Henry is a customer and user of Defendant Verizon's electronic communication services within the meaning of 18 U.S.C. § 2510(13).

117.   R.H. is a customer and user of Defendant Verizon's electronic communication services within the meaning of 18 U.S.C. § 2510(13).

118.    Defendant Verizon knowingly divulged Ms. Henry's cell site location information (CSLI) records, by pinging her cellular location, to a government entity on multiple occasions in violation of 18 U.S.C. § 2702(a)(3).

119.    Defendant Verizon knowingly divulged R.H., a minor's cell site location information (CSLI) records, by pinging her cellular location, to a government entity on multiple occasions in violation of 18 U.S.C. § 2702(a)(3).

120.    Defendant Verizon provided Plaintiffs' cell site location information records without any good faith basis.

121.    Defendant Verizon did not notify Plaintiffs of the divulgence of these records and other information pertaining to her and her use of Verizon services, nor did Plaintiffs consent to such.

122.    As a direct and proximate result of Defendant Verizon's divulgence of these records, Plaintiffs were damaged by Defendant Verizon's divulgence of their CSLI records in that:

    a.    Plaintiffs suffered a violation of their reasonable expectation of privacy;

    b.    Plaintiffs were caused to suffer mental anguish; and

    c.    Plaintiffs were subjected to being victimized by Defendants Gaston, Burkett, Bresnahan, and Cozad who utilized the CSLI records provided by Defendant Verizon to engage in criminal street gang activities against Plaintiffs.

WHEREFORE Plaintiffs pray for judgment against Defendant Verizon in a fair and reasonable amount in excess of seventy-five thousand dollars ($75,000.00) for the harms and losses they have suffered, for their costs incurred herein, for attorneys' fees, for punitive damages, and for any further relief this Court deems just and proper.

20

## COUNT VII
### Invasion of Privacy Claim
### (Plaintiff Adrienne Henry and R.H. v. Defendant Verizon)

123.    Plaintiffs incorporates the above allegations as if fully set forth herein.

124.    Ms. Henry had a lawful desire to keep her location and her daughter R.H.'s location secret and private after the unsettling incident with Defendant Gaston.

125.    Ms. Henry and R.H. had a right to a reasonable expectation of privacy in their records of their physical location as provided by their cellular device to Verizon.

126.    Defendant Verizon provided Defendant Burkett with the cellular "pings" used to locate Ms. Henry and R.H. on more than one occasions.

127.    Defendant Burkett had no official governmental motivation or probable cause to obtain such information, nor did Defendant Verizon confirm the existence of such before providing the secret and private information.

WHEREFORE Plaintiffs prays for judgment against Defendant Verizon in a fair and reasonable amount in excess of seventy-five thousand dollars ($75,000.00) for the harms and losses they have suffered, for their costs incurred herein, for attorneys' fees, for punitive damages, and for any further relief this Court deems just and proper.

## COUNT VIII
### Intrusion Upon Seclusion
### (Plaintiff Adrienne Henry and R.H. v. Defendant Verizon)

128.    Plaintiffs incorporate the above allegations as if fully set forth herein.

129.    Missouri has recognized a privacy interest under common law, specifically, at Restatement (Second) of Torts, § 652B "Intrusion upon Seclusion," which states: "[o]ne who intentionally intrudes, physically or otherwise upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."

21

130.    All cellular telephone service providers owe their customers a duty not to disclose private information about their customer's without the customer's informed consent.

131.    Plaintiffs are customers of Defendant Verizon. As a result, Defendant Verizon owe Plaintiffs a duty not to disclose their private information.

132.    Ms. Henry's CSLI records collected and stored by Defendant Verizon constituted private information.

133.    Ms. Henry had a reasonable expectation that Defendant Verizon would not disclose her private data, including R.H.'s data, to Defendant Burkett without her authorization, consent, knowledge, or any further action on her part.

134.    Defendant Verizon, a remote computing service or electronic communication service provider, had a duty to protect Ms. Henry's private data, including R.H.'s data, against unauthorized access, use or disclosure.

135.    On or about February 10, 2023 and February 18, 2023, Defendant Verizon intruded upon Ms. Henry's seclusion by knowingly and voluntarily disclosing her private data, including R.H.'s data, to Defendant Burkett and Defendant Bresnahan.

136.     by "pinging" her and R.H.'s cellular device five times.

137.    Defendant Verizon's conduct described herein was intentional.

138.    Defendant Verizon's conduct in disclosing Ms. Henry's and R.H.'s private data was and is highly offensive to a reasonable person.

139.    The disclosure of Plaintiffs' location through their private cellular data constitutes an offensive intrusion upon seclusion as described in the Restatement (Second) of Torts § 652B so as to constitute an invasion of Plaintiffs' privacy under the common law.

140.    As a direct and proximate result of Defendant Verizon's intrusion upon her seclusion, Ms. Henry was damaged by Defendants Verizon and Burkett's intrusion in that:

a.   Defendants Verizon harmed Ms. Henry's and R.H.'s interest in privacy;

b.   Plaintiffs did not get the full value of the services for which they paid Defendant Verizon, which included Defendant Verizon's duty to maintain confidentiality;

c.   Plaintiffs were caused to be victimized by Defendants Gaston, Burkett, Bresnahan, and Cozad who utilized the CSLI data provided by Defendant Verizon to engage in criminal street gang activities against Plaintiffs; and

d.   Plaintiffs were caused to suffer mental anguish.

WHEREFORE Plaintiffs pray for judgment against Defendant Verizon in a fair and reasonable amount in excess of seventy-five thousand dollars ($75,000.00) for the harms and losses they have suffered, for their costs incurred herein, for attorneys' fees, for punitive damages, and for any further relief this Court deems just and proper.

## COUNT IX
### Breach of Contract
### (Plaintiff Adrienne Henry v. Defendant Verizon)

141.   Plaintiff Adrienne Henry incorporates the above allegations as if fully set forth herein.

142.   At all times relevant, Ms. Henry and Defendant Verizon had entered into a contract for the use of a cellular phone by Ms. Henry.

143.   As part of the contract, both parties agreed to the terms of the Verizon Privacy Policy drafted by Verizon which states Verizon will disclose consumer information in response to emergency requests "in cases involving danger of death or serious physical injury to any person or other emergencies."

144.   Defendant Verizon owed Plaintiff a duty to maintain confidentiality.

23

145. Defendant Verizon, in its transparency report presenting data on demands received from law enforcement for customer records, states:

> [Verizon] carefully review[s] each demand that we receive to ensure that it is valid. We seek to minimize disclosure of customer data by carefully interpreting demands and may seek clarification, request modification, or pursue other options, including contesting a demand, if circumstances warrant.

146. On or about February 10, 2023, Defendant Verizon voluntarily disclosed Ms. Henry's private CSLI records by "pinging" her cellular phone without a warrant, when the Washington County 911 Dispatch made the request, on behalf of Defendant Burkett which was false or facially insufficient for Defendant Verizon or any of its representatives to believe in good faith that there was ongoing emergency involving the risk of death or serious physical injury sufficient to justify the disclosure of Ms. Henry's records without a warrant at any point in time.

147. On or about February 18, 2023, Defendant Verizon intruded upon Ms. Henry's seclusion by knowingly and voluntarily disclosing Ms. Henry's private data to Defendant Bresnahan.

148. By causing the surreptitious, non-consensual, unauthorized disclosure of Ms. Henry's private CSLI records to Defendant Burkett, Defendant Verizon breached its contract with Ms. Henry.

149. As a direct and proximate result of Defendant Verizon's breach of contract, Ms. Henry was damaged by Defendant Verizon's breach in that:

a. Ms. Henry, in agreeing to her private data being collected by Defendant Verizon, did not receive consideration from Defendant Verizon who represented it would honor Ms. Henry's reasonable expectation of privacy;

b. Ms. Henry was caused to suffered mental anguish; and

c.   Plaintiff were caused to be victimized by Defendants Gaston, Burkett, Bresnahan, and Cozad who utilized the CSLI data provided by Defendant Verizon to engage in criminal street gang activities against Plaintiffs.

WHEREFORE Plaintiff prays for judgment against Defendant Verizon in a fair and reasonable amount in excess of seventy-five thousand dollars ($75,000.00) for the harms and losses she has suffered, for her costs incurred herein, for attorneys' fees, for punitive damages, and for any further relief this Court deems just and proper.

## COUNT X
### Negligence
**(Plaintiffs Adrienne Henry and R.H. v. Defendant Verizon)**

150.   Plaintiffs incorporate the above allegations as if fully set forth herein.

151.   Defendant Verizon undertook and/or assumed a duty to Ms. Henry and R.H. to maintain the confidentiality of their private data and to unnecessarily avoid causing harm to them.

152.   Defendant Verizon was careless and breached the duty it owed to Plaintiffs in the following ways:

a.   disclosing Ms. Henry's and R.H.'s CSLI records;

b.   Failure to investigate validity of exigent circumstance alleging need for warrantless disclosure of Ms. Henry's and R.H.'s CSLI records;

c.   Disclosing Ms. Henry's and R.H.'s CSLI records to Defendant Burkett without certification of an exigent circumstance;

d.   Disclosing Ms. Henry's and R.H.'s CSLI records to Defendant Bresnahan without certification of an exigent circumstance; and

e.   Failure to enact internal policies compliant with federal statute and sufficient to prevent aiding in the violation of Ms. Henry's and R.H.'s privacy and Constitutional rights.

25

153.    As a direct and proximate result of Defendant Verizon's negligence, Ms. Henry and R.H. was damaged by Defendant Verizon's negligence in that:

a.    Defendant's negligent divulgence of Ms. Henry's and R.H.'s CSLI records aided Defendants Gaston, Burkett, Bresnahan, and Cozad in the commission of criminal street gang activities including stalking and attempted kidnapping of Plaintiffs.

b.    Ms. Henry and R.H. were caused to suffer a violation of their reasonable expectation of privacy;

c.    Ms. Henry did not get the full value of the services for which she paid, which includes Defendant Verizon's duty to maintain confidentiality; and

d.    Ms. Henry and R.H. were caused to suffer mental anguish.

WHEREFORE Plaintiffs pray for judgment against Defendant Verizon in a fair and reasonable amount in excess of seventy-five thousand dollars ($75,000.00) for the harms and losses they have suffered, for their costs incurred herein, for attorneys' fees, for punitive damages, and for any further relief this Court deems just and proper.

**PLAINTIFFS DEMAND TRIAL BY JURY**

**THE SIMON LAW FIRM, P.C.**

By: */s/ Amy Collignon Gunn*
    Amy Collignon Gunn, #45016 MO
    Elizabeth C. McNulty, #72026 MO
    800 Market Street, Suite 1700
    St. Louis, Missouri 63101
    P:  (314) 241-2929
    F:  (314) 241-2020
    agunn@simonlawpc.com
    emcnulty@simonlawpc.com
    ***Attorneys for Plaintiffs***