UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| ADRIENNE HENRY, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 1:24-cv-00218-MTS |
| | ) |
| IRON COUNTY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Donald Rickie Gaston's Amended Motion to Stay Proceedings. Doc. [88]. Plaintiff Adrienne Henry and Plaintiff R.H. oppose the Motion, Doc. [90], and Defendant Gaston has filed his Reply in Support, Doc. [93]. The matter is fully briefed and ready for decision. For the reasons that follow, the Court will grant the Motion.

\*

The Court has set forth the factual allegations in this matter elsewhere. *See* Doc. [86] at 1–4; 2025 WL 2780909, \*1–2. In sum, and as relevant here, Plaintiffs allege that Defendant Gaston conspired with several Iron County law enforcement officers to violate Plaintiffs' Fourth Amendment rights against unlawful search and seizure. Doc. [1] ¶ 68. Based on the underlying events, Defendant Gaston has been criminally charged with "two felonies (participating knowingly in criminal street gang activities and stalking in the first degree) and six misdemeanors (attempted third-degree kidnapping, stalking in the second degree, obtaining criminal history record information under false pretenses, disclosure of confidential criminal records, misusing '911', and making a false report)." Doc. [88] ¶ 5; *see also State of Missouri*

*v. Gaston*, 23WA-CR00125-01 (Circuit Court of Washington County, State of Missouri). According to Defendant Gaston, a jury trial in his criminal case is set for May 27, 2026.

Faced with defending himself in concurrent criminal and civil proceedings, Defendant Gaston seeks a stay of these civil proceedings as they pertain to him. Doc. [88] ¶ 8. Plaintiffs oppose Defendant Gaston's Motion, arguing that the balance of harm to Plaintiffs requires the Motion's denial. Doc. [90] at 2–3. In the alternative, Plaintiffs argue that the Court could order Defendant Gaston's discovery sealed and limit its use to counsel and the parties in the civil litigation. *Id.* at 3–4. Finally, if the Court stays proceedings against Defendant Gaston, Plaintiffs ask the Court to order Defendant Gaston to file recurring status reports while his criminal case is pending, including one "within ten days after the entry of a plea or return of a verdict." *Id.* at 4. The Court will grant Defendant Gaston's Motion for Stay and impose a status-report requirement.

The Court has inherent power to stay proceedings as part of its power to manage its docket and the parties before it. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (Cardozo, J.). Doing so calls for an exercise of sound discretion, and the Court "must weigh competing interests and maintain an even balance." *Id.* at 254–55. Against this backdrop, a stay of civil proceedings based on "factually related criminal proceedings . . . is sometimes warranted." *Koester v. Am. Republic Invs., Inc.*, 11 F.3d 818, 823 (8th Cir. 1993). As the Court of Appeals for the Eighth Circuit has explained, a defendant seeking such a stay "cannot hide behind a blanket invocation of the Fifth Amendment privilege"; instead, he "must make a strong showing either that the two proceedings are so interrelated that he cannot protect himself at the civil trial by selectively invoking his Fifth Amendment privilege or that the two trials will so overlap that effective defense of both is impossible." *Id.* (citation omitted). "[T]he strongest

case for deferring civil proceedings . . . is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375–76 (D.C. Cir. 1980) (en banc). The relevant factors to consider include:

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

*Keating v. Off. of Thrift Supervision*, 45 F.3d 322, 325 (9th Cir. 1995).

As an initial matter, no one disputes that the same facts underpin both Plaintiffs' civil claims and Defendant Gaston's criminal charges. Accordingly, Defendant Gaston makes "the strongest case for deferring [the] civil proceedings against him," *Dresser Indus.*, 628 F.2d at 1375–76, and the Court agrees with Defendant Gaston that the two proceedings "are so interrelated that he cannot protect himself at the civil trial by selectively invoking his Fifth Amendment privilege." *Koester*, 11 F.3d at 823. Under these circumstances, the above factors weigh in favor of a stay at this time, with an added requirement that Defendant Gaston provide regular updates as to the status of his criminal case.

While Plaintiffs of course have an interest in proceeding expeditiously with their civil claims, *see Ruszczyk as Tr. for Ruszczyk v. Noor*, 349 F. Supp. 3d 754, 760 (D. Minn. 2018), the Court is not convinced that this prejudice-to-plaintiff factor weighs so heavily in Plaintiffs' favor. Plaintiffs rightly raise a certain level of urgency when it comes to pursuing their claims, *see* Doc. [90] at 2; *Fid. Nat'l Title Ins. Co. of N.Y. v. Nat'l Title Res. Corp.*, 980 F. Supp. 1022, 1024 (D. Minn. 1997) (acknowledging that "[w]itnesses relocate, memories fade, and persons

allegedly aggrieved are unable to seek vindication or redress for indefinite periods of time"), but the level of factual overlap between the criminal and civil proceedings lessens these concerns. *See Edwards v. Thomas*, 4:19-cv-4018, 2020 WL 888538, at *4 (W.D. Ark. Feb. 24, 2020) ("Given the factual overlap between this case and the criminal case, the Court is unconcerned that evidence will be lost or made unavailable if discovery in this case is stayed."); *Volmar Distribs., Inc. v. N.Y. Post Co.*, 152 F.R.D. 36, 40 (S.D.N.Y. 1993) (remarking that "the criminal justice system will help safeguard the evidence").

Additionally, as has been recognized by other courts, Plaintiffs "may benefit from the resolution of or discovery obtained in the criminal case against [Defendant Gaston]." *Aldridge v. City of St. Louis*, 4:18-cv-1677-CAS, 2020 WL 223928, at *4 (E.D. Mo. Jan. 15, 2020); *accord Edwards*, 2020 WL 888538, at *4 (W.D. Ark. Feb. 24, 2020) (acknowledging that a stay "would also work in [p]laintiff's favor in certain ways," including benefiting from evidence gathered by the prosecution and "the transcripts and rulings in the criminal action"). Moreover, once the criminal matter is resolved, "Plaintiffs will then be able to conduct discovery 'unaffected by the complicating factor of a parallel criminal proceeding.'" *Turley v. United States*, No. 2:02-cv-4066-NKL, 2002 WL 31097225, at *2 (W.D. Mo. Aug. 22, 2002) (quoting *Campbell v. Eastland,* 307 F.2d 478, 488 (5th Cir. 1962)). Finally, the Court will lessen any harm to Plaintiffs by imposing a requirement to file periodic status updates as to the criminal proceeding. These status reports will give the parties "an opportunity to address the propriety of continuing the stay if the criminal matter is not resolved after the impending trial." *Edwards*, 2020 WL 888538, at *4.

This contrasts with the level of harm that Defendant Gaston faces, given the charges brought against him and the interrelatedness of the civil and criminal proceedings. Such

- 4 -

circumstances place Defendant Gaston in a predicament where he "would have to choose between invoking [his] Fifth Amendment rights against self-incrimination, potentially prejudicing [himself] in the civil case, and waiving that privilege, perhaps leading to criminal liability."  *Garrett v. Cassity*, 4:09-cv-01252-ERW, 2011 WL 2689359, at *4 (E.D. Mo. July 11, 2011).  The Court concludes that these circumstances weigh "strongly in favor" of a stay with respect to Defendant Gaston.  *See Aldridge*, 2020 WL 223928, at *5.[*]

Turning to the effect a stay would have on judicial resources, it is true that entering a stay will "delay a final disposition of this case," but it is also "possible that resolution of the criminal case and the discovery obtained therein may streamline the civil case proceedings."  *Aldridge*, 2020 WL 223928, at *5.  Where, as here, there is significant overlap between a criminal and civil case, "the discovery produced by the criminal proceeding will likely be relevant to and discoverable for this civil proceeding" such that a stay will likely "conserve scarce judicial resources."  *Ruszczyk*, 349 F. Supp. 3d at 764.  Further, without a stay, "discovery may well 'become bogged down' as the Court 'will be forced to make numerous individual rulings on what will likely be a long series of Fifth Amendment assertions.'"  *Id.* (*quoting United States v. All Meat and Poultry Prods.*, 1:02-cv-05145-EAB, 2003 WL

---

[*] On this point, the two cases on which Plaintiffs primarily rely are distinguishable.  First, in *Fidelity National Title Insurance*, the court weighed the above factors and found that a stay was not warranted and, instead, opted to seal the pertinent portions of the civil record because doing so "comported with justice for both sides."  *Fid. Nat'l Title Ins. Co. of N.Y. v. Nat'l Title Res. Corp.*, 980 F. Supp. 1022, 1024–25 (D. Minn. 1997).  But there, the defendant seeking a stay was not yet indicted and was thus "not encumbered with the burden of developing simultaneously both criminal and civil defenses."  *Id.* at 1025 (citation omitted).  That is not the case here.  Similarly, in *General Dynamics*, the Eighth Circuit affirmed a district court's decision denying defendant's motion for a stay filed "some three months *after* [a] jury conviction on the criminal charges."  *Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973) (emphasis added).  In short, unlike Defendant Gaston, neither of the defendants in the above cases had to defend against civil and criminal proceedings simultaneously and—unsurprisingly—the harms at issue balance differently as a result.

22284318, at *5 (N.D. Ill. Oct. 03, 2003)).  Accordingly, the Court finds that this factor is neutral.

Finally, like the parties in their briefing, the Court addresses the final two factors together: the interest of non-parties and the interest of the public.  According to Plaintiffs, both the public and non-parties have a "heightened interest" in the resolution of the allegations in this civil matter.  Doc. [90] at 3.  The public certainly has an interest in "the prompt disposition of civil litigation," *see Chagolla v. City of Chicago*, 529 F. Supp. 2d 941, 946 (N.D. Ill. 2008), and this interest may be even more pronounced when wrongdoing by government officers is at issue, *see Ruszczyk*, 349 F. Supp. 3d at 765.  But there is an equally strong public interest "in ensuring that the criminal process can proceed untainted by civil litigation." *Chagolla*, 529 F. Supp. 2d at 947; *see also State Farm Mut. Auto. Ins. Co. v. Healthcare Chiropractic Clinic, Inc.*, 0:15-cv-2527-SRN-HB, 2016 WL 9307608, at *6 (D. Minn. Apr. 26, 2016) ("Courts around the country have recognized that 'the public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant.'" (quoting *Javier H. v. Garcia–Botello*, 218 F.R.D. 72, 75 (W.D.N.Y. 2003))).  For these reasons, the Court concludes that the final two factors are neutral as well.

***

Therefore, because the civil and criminal proceedings against Defendant Gaston are so closely related, the harm to Defendant Gaston without a stay outweighs the harm to Plaintiffs with a stay imposed, and the other relevant factors are neutral under the circumstances, the Court concludes that a stay of this matter as to Defendant Gaston is appropriate.

Accordingly,

- 6 -

**IT IS HEREBY ORDERED** that Defendant Gaston's Amended Motion for Stay, Doc. [88], is **GRANTED**.

**IT IS FURTHER ORDERED** that this matter is **STAYED** as to Defendant Gaston.

**IT IS FINALLY ORDERED** that, no later than forty-five (45) days from today's date, every forty-five (45) days thereafter, and ten (10) days after entry of a plea or return of a verdict, Defendant Gaston shall file a Report providing an update as to the status of his criminal case, *State of Missouri v. Gaston*, 23WA-CR00125-01 (Circuit Court of Washington County, State of Missouri).

Dated this 25th day of November 2025.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE